**Benny Earl FARRELL, an Oklahoma citizen, Plaintiff–Appellant,**

v.

**KLEIN TOOLS, INC., a Delaware corporation, Defendant–Appellee.**

No. 87–1083.

United States Court of Appeals, Tenth Circuit.

Feb. 1, 1989.

Bob Behlen (Robert Mansell, on the briefs), Lampkin, McCaffrey & Tawwater, Oklahoma City, Okl., for plaintiff-appellant.

Michael R. Chaffin (Robert L. Huckaby, on the brief), Huckaby, Fleming, Frailey, Chaffin & Darrah, Chickasha, Okl., for defendant-appellee.

Before MOORE, ANDERSON and EBEL, Circuit Judges.

STEPHEN H. ANDERSON, Circuit Judge.

Benny Earl Farrell, an iron worker, sustained injuries in a fall at a construction site where he was working. He sued Klein Tools, Inc. ("Klein") alleging that the safety belt and lanyard he was using for fall protection were manufactured by Klein and were defective in that the hook on the lanyard was too large in relation to the "D" ring on the safety belt, allowing the

hook to "roll-out" of the ring.[1] He contended that his fall was caused by such an occurrence. Klein defended largely on the ground that the safety belt and lanyard, and specifically the hook, in question were not manufactured by it. In its answer to Farrell's complaint Klein also raised the two defenses of abnormal use of the product, and assumption of the risk. Jurisdiction was based on diversity of citizenship. Oklahoma's substantive law governs.

The case was tried to a jury. Over Farrell's objections the district court submitted to the jury Klein's requested instructions on abnormal use of the product, Instruction 17, and assumption of the risk, Instruction 18. The jury returned a verdict in favor of Klein. The district court subsequently denied Farrell's motion for a new trial based on alleged error in giving Instructions 17 and 18. Farrell appeals from the denial of that motion.

The only issues on appeal are whether there was sufficient evidence to support the submission of Instructions 17 and 18 on the defenses of abnormal use and assumption of the risk, whether the instruction on abnormal use misstated the applicable law, and whether any error in those respects is sufficiently prejudicial to require a reversal. For the reasons stated below we conclude that it was reversible error to submit to the jury the instruction on the defense of abnormal use of the product. As a result we remand for a new trial. Because of our disposition with regard to Instruction 17 it is unnecessary to address the other issues raised by Farrell.

### I.

■ Although the determination of the substance of a jury instruction in a diversity case is a matter of state law, the grant or denial thereof is a matter of procedure controlled by federal law. *Brownlow v. Aman,* 740 F.2d 1476, 1490 (10th Cir.1984);

*Wright v. Albuquerque Auto–Truck Stop Plaza, Inc.,* 591 F.2d 585, 587 (10th Cir. 1979).

The parties are in agreement in their briefs that the applicable Oklahoma law on the defense of misuse or abnormal use of a product is defined by the Oklahoma Supreme Court in *Fields v. Volkswagen of America, Inc.,* 555 P.2d 48 (Okla.1976). *See* Brief of the Appellant at 4; Answer Brief of Appellee at 2–3. In *Fields* the Court stated:

"Generally when we speak of the defense of misuse or abnormal use of a product we are referring to cases where the method of using a product is not that which the maker intended or is a use that could not reasonably be anticipated by a manufacturer. A distinction must be made between use for an abnormal purpose and use for a proper purpose but in a careless manner (contributory negligence).

. . . .

"In order to determine whether the use of a product by a plaintiff is abnormal, we must ask whether it was reasonably foreseeable by the manufacturer. A manufacturer is not liable for injuries resulting from such use if it is not foreseeable."

*Id.* at 56–57 (footnotes omitted). *See McMurray v. Deere and Co. Inc.,* 858 F.2d 1436, 1442 (10th Cir.1988); *Smith v. United States Gypsum Co.,* 612 P.2d 251, 254–55 (Okla.1980); *Stewart v. Scott–Kitz Miller Co.,* 626 P.2d 329, 331 (Okla.Ct.App. 1981); *Spencer v. Nelson Sales Co., Inc.,* 620 P.2d 477, 482–83 (Okla.Ct.App.1980).

■ Farrell first contends that Instruction 17 did not correctly reflect Oklahoma law. Instruction 17 reads as follows:

"In this regard, you are instructed that the defendant has raised the affirmative defense of abnormal use and has claimed

---

1. A lanyard is a rope with metal hooks on each end. The lanyard allegedly used by Farrell when he fell had one small hook and one large hook. A safety belt is a large nylon woven waist belt with metal rings, sometimes referred to as "D" rings, on each end. A worker uses the safety equipment by hooking one of the lanyard

hooks to a "D" ring and one of the hooks to some other fixture or by wrapping the lanyard around a stable fixture and attaching both of the hooks to the "D" rings on the safety belt. The procedure is referred to as tying off. R.Vol. III at 117.

that the plaintiff's use of the equipment was abnormal because such use was not foreseeable by the defendant. You are instructed that a distinction must be made between use for an abnormal purpose and use for a proper purpose but in a careless manner. The first, use for an abnormal purpose, is a defense to the plaintiff's claim and a bar to his recovery. The second, use for a proper purpose but in a careless manner, is not a defense to the plaintiff's claim. In this regard, you are instructed that if the use of the equipment was a use that the defendant could reasonably foresee, then such use does not constitute abnormal use.

"If you find that the defendant has proven by a preponderance of the evidence that the plaintiff was using the equipment in an abnormal manner and that such use was the sole cause of the accident involved herein and thus has proven this affirmative defense, then you must find in favor of the defendant and against the plaintiff."

R.Vol. I at Tab 36.

Specifically, Farrell acknowledges that the first paragraph of Instruction 17 correctly states the legal principle "that if the use of the equipment was a use that the defendant could reasonably foresee, then such use does not constitute abnormal use." *Id.* However, he contends that it was error not to repeat that phrase, or some similar reference to foreseeability, in the final paragraph of the instruction. He cites virtually no authority, and none directly on point, in support of that position, and we find that it is without merit. It is an established principle that jury instructions are to be read as a whole. *See United States v. Grissom,* 814 F.2d 577, 580 (10th Cir.1987). *See also United States v. Troutman,* 814 F.2d 1428, 1451 (10th Cir. 1987) (it is enough that the jury instructions, viewed as a whole rather than in isolation, give an accurate statement of the

law). The instruction in question may not be ideal since the last paragraph in isolation could conceivably cause some confusion, but read as a whole it sufficiently reflects Oklahoma law regarding the abnormal use defense as applied to the circumstances of this case.[2]

 Whether or not there was evidence sufficient to support the submission of Instruction 17 to the jury is a different matter. Under federal law it is error to give an instruction when there is no evidence to support it. *McMurray v. Deere and Co., Inc.,* 858 F.2d 1436, 1440–41 (10th Cir.1988); *Rolfes v. Int'l Harvester Co.,* 817 F.2d 471, 474 (8th Cir.1987); *Smith v. FMC Corp.,* 754 F.2d 873, 877 (10th Cir. 1985); *Brownlow v. Aman,* 740 F.2d at 1490; *Smith v. Mill Creek Court, Inc.,* 457 F.2d 589, 592 (10th Cir.1972). There must be more than a mere scintilla of evidence to support an instruction. Sufficient competent evidence is required. *See Smith v. FMC,* 754 F.2d at 877; *Brownlow v. Aman,* 740 F.2d at 1490; *Moe v. Avions Marcel Dassault–Breguet Aviation,* 727 F.2d 917, 927–28 (10th Cir.1984); *Chavez v. Sears, Roebuck & Co.,* 525 F.2d 827, 830 (10th Cir.1975); *Hartman v. Miller Hydro Co.,* 499 F.2d 191, 193 (10th Cir.1974); *Smith v. Mill Creek Court, Inc.,* 457 F.2d at 592; *General Motors Corp. v. Walden,* 406 F.2d 606, 609 (10th Cir.1969); 9 C. Wright & A. Miller, Federal Practice and Procedure 2524 (1971).

Klein's only evidence on the subject of abnormal use consisted of brief statements by two defense witnesses, Paul Steigler and Donald Beck. Mr. Steigler, a representative of Klein, testified on cross-examination that "[t]he big [metal snap hook on the lanyard] has never been advocated for use in a 'D' ring." R.Vol. III at 201. Mr. Beck, an employee of a safety equipment manufacturing company, testified that the type of large hook allegedly utilized by Farrell was "intended to be used on a 2–

---

**2.** Although not an error and not discussed by either party in their briefs we note that there is some further potential for confusion in Instruction 17. The first paragraph of the instruction distinguishes "use for an abnormal *purpose*"

from "use for a proper purpose but in a careless *manner.*" The second paragraph refers to use in an "abnormal manner," and thus somewhat blurs the distinction referred to in the first paragraph.

by–4 or a bar or a rod or a form, or something where it's not a ring." R.Vol. II at 28.

Not only does such testimony appear to fall into the "mere scintilla" category, more importantly it does not contain the slightest reference to or support for the proposition that the manufacturer could not reasonably foresee that a worker would use the lanyard in question to tie-off by inserting the hook into the "D" ring on his safety belt. To the contrary, the evidence shows that it was indeed foreseeable to a manufacturer that the safety equipment would be used in such a way. R.Vol. III at 37–38. The evidence also affirmatively shows that the lanyard and hook in question were specifically manufactured for the purpose of tying-off and were issued by the employer to Farrell for the purpose. Under the circumstances, we hold that there was insufficient evidence to support an instruction to the jury on the defense of abnormal use of the product.

## II.

 The final issue is whether the erroneous submission of the abnormal use defense to the jury was prejudicial so as to require reversal. *McMurray v. Deere and Co.*, 858 F.2d at 1443; *Joyce v. Atlantic Richfield Co.*, 651 F.2d 676, 682–83 (10th Cir.1981). The issue centers on the fact that the jury returned a general verdict and it cannot be determined with absolute certainty whether the jury relied on the improperly submitted ground.

Klein contends that even if the instructions were not supported by the evidence reversal is not required. It advances two arguments in support of that position. First, it submits that for purposes of describing the limits of a products liability

action, it is not reversible error to give an instruction which correctly states the law even though the instruction is inapplicable to the evidence in the case. *Murphy v. Owens–Illinois, Inc.*, 779 F.2d 340, 345 (6th Cir.1985); Answer Brief of Appellee at 6–7. We disagree that such a rule applies in circumstances similar to those presented here.

Klein next argues that an appellate court can examine the entire record to determine if the error was likely to have influenced the verdict. In other words, Klein urges that the harmless error principle applies. It asserts that a bare possibility that the verdict was influenced is not enough to warrant reversal arguing that a likelihood of prejudice must be shown by the appealing party. *Id.* at 7–8. For that proposition Klein cites *Lusby v. T.G. & Y. Stores, Inc.*, 749 F.2d 1423, 1436–37 (10th Cir.1984), *cert. granted and vacated on other grounds sub nom., City of Lawton v. Lusby*, 474 U.S. 805, 106 S.Ct. 40, 88 L.Ed.2d 33, *cert. denied*, 474 U.S. 818, 106 S.Ct. 65, 88 L.Ed.2d 53, *reh'g denied*, 474 U.S. 1014, 106 S.Ct. 548, 88 L.Ed.2d 476 (1985); *Sanderson v. Chapman*, 487 F.2d 264, 267 (9th Cir.1973); and *Employers Liability Assurance Corp. v. Freeman*, 229 F.2d 547, 551 (10th Cir.1955).

In support of its position Klein makes a convincing case that the trial focused on whether Klein manufactured the product in question, and upon Farrell's credibility. There was overwhelming evidence that Klein did not manufacture the product, and Farrell had given seriously conflicting versions of the accident. The abnormal use defense was not referred to in either the opening statements or the closing arguments.[3] Therefore, it appears highly unlikely that the jury's verdict was affected by the abnormal use instruction.

---

**3.** In *Joyce v. Atlantic Richfield Co.*, 651 F.2d at 682, cited in *McMurray* for the proposition that a court must examine the prejudicial effect of an error before reversing, we stated that we must make the determination as to whether to reverse "in the light, not only of the instructions as a whole, but of the allegations of the complaint, the opening statements, the evidence, and the closing arguments." (*quoting Alloy International Co. v. Hoover–NSK Bearing Co.*, 635

F.2d 1222, 1226 (7th Cir.1980). *See also Smith v. Minster Machine Co.*, 669 F.2d 628, 631–32 (10th Cir.1982) (In considering whether allegedly erroneous wording (as opposed to erroneous submission) of the instruction on state-of-the-art-defense to product liability claim amounted to reversible error, the opinion refers to fact that the defendant did not even mention the defense in closing argument.).

The law on this subject is not characterized by any great clarity. The general rule, usually stated without qualification, is that when one of two or more issues submitted to the jury was submitted erroneously, a general verdict cannot stand because it cannot be determined whether the jury relied on the improper ground. *See Sunkist Growers Inc. v. Winckler & Smith Citrus Products Co.,* 370 U.S. 19, 29–30, 82 S.Ct. 1130, 1135–1136, 8 L.Ed.2d 305 (1962); *United New York and New Jersey Sandy Hook Pilots Association v. Halecki,* 358 U.S. 613, 619, 79 S.Ct. 517, 520, 3 L.Ed.2d 541 (1959); *McMurray v. Deere and Co., Inc.,* 858 F.2d at 1444; *Bone v. Refco,* 774 F.2d 235, 242 (8th Cir. 1985); *Neubauer v. City of McAllen, Texas,* 766 F.2d 1567, 1575 (5th Cir.1985); *Smith v. FMC Corp.,* 754 F.2d at 877; *Collis v. Ashland Oil and Refining Co.,* 722 F.2d 625, 627 (10th Cir.1983); *Avins v. White,* 627 F.2d 637, 646 (3rd Cir.1980); *Morrissey v. National Maritime Union of America,* 544 F.2d 19, 26–27 (2nd Cir.1976).

As usual, and as Klein has pointed out, there are exceptions. In appropriate cases this court has recognized a harmless error test, using a reasonable likelihood standard. Thus, in *Asbill v. Housing Authority of Choctaw Nation of Oklahoma,* 726 F.2d 1499 (10th Cir.1984), after acknowledging the general rule established in *Sunkist Growers* we stated:

"As with all errors committed at trial, a litmus test for reversal is whether the appellant was thereby unjustly prejudiced. *See* Fed.R.Civ.P. 61; 28 U.S.C. § 2111 (1976). A general verdict may be upheld if it appears that the errors committed were not 'vital,' or prejudicial to the 'substantial rights' of the objecting party. *See Wilmington Mining [sic] Star Mining Co. v. Fulton,* 205 U.S. 60, 79, 27 S.Ct. 412, 419, 51 L.Ed. 708 (1906).

"[If plaintiff's properly submitted claim] were strongly and clearly supported by the record, we could possibly affirm the verdict on a harmless error theory. As it stands, however, the [proper claim] could be supported only by the jury's finding in [plaintiff's] favor on two extremely 'close' factual questions. Un-

der these circumstances, we cannot say that the erroneous submission of the due process claims to the jury constituted harmless error. It is clear that the jury may have based its verdict upon these claims; *we cannot be 'reasonably certain that the jury was not significantly influenced by issues erroneously submitted to it.'* E.I. duPont de Nemours & Company v. Berkley and Company, 620 F.2d 1247, 1258 (8th Cir.1980) [*citing Gardner v. General Motors Corporation,* 507 F.2d 525, 529 (10th Cir.1974) ]."

*Id.* at 1504 (emphasis added) (footnote omitted). *See also Brownlow v. Aman,* 740 F.2d at 1490 ("It is prejudicial error for a trial court to give instructions which find no support in the evidence *unless the record shows the error [to be] harmless.*") (emphasis added) (*quoting Kirschner v. Broadhead,* 671 F.2d 1034, 1040 (7th Cir. 1982)); *Lusby v. T.G. & Y. Stores, Inc.,* 749 F.2d at 1436 (holding that an instruction on future damages when there was no evidence to support such an instruction was harmless error, the court reasoned that the jury did not hear any facts from which they could infer that plaintiffs would incur future costs and the size of the jury award indicated it was unlikely that the jury included future damages).

Likewise, exceptions have also been recognized in other circuits. In *Collum v. Butler,* 421 F.2d 1257 (7th Cir.1970), the Seventh Circuit permitted a general verdict to stand even though one of multiple claims had been erroneously submitted to the jury. The court stated:

"The dominant issue, as the record shows, involved the injuries suffered by the plaintiff as a result of the alleged beating inflicted upon him by the defendants. To permit other issues which have occupied positions of such relative insignificance in the trial to be treated now as so important as to make their submission to the jury prejudicial would not serve the interest of justice. Error must be viewed with respect to its relative effect on the results of trial. In our considered opinion, *the results of the present trial would not have been substantially af-*

fected if these issues had not been submitted to the jury."

*Id.* at 1260 (emphasis added). *See also Morrissey v. National Maritime Union of America*, 544 F.2d at 27 (general rule must be followed unless there is sufficient basis for confidence that the same verdict would have been rendered even if the improper claim had not been submitted to the jury); *Simko v. C & C Marine Maintenance Co.*, 594 F.2d 960, 967 (3rd Cir.) (stating general rule but citing *Morrissey*'s exception), *cert. denied*, 444 U.S. 833, 100 S.Ct. 64, 62 L.Ed.2d 42 (1979); *Mueller v. Hubbard Milling Co.*, 573 F.2d 1029, 1039 (8th Cir.) (adopting *Morrissey* analysis; the essential question is whether the appellate court is "fairly convinced that the jury proceeded on a sound basis"), *cert. denied*, 439 U.S. 865, 99 S.Ct. 189, 58 L.Ed.2d 174 (1978); *Roginsky v. Richardson–Merrell, Inc.*, 378 F.2d 832, 837–38 (2nd Cir.1967).

However, despite these exceptions we consider ourselves bound, at least in this context, by our two most recent cases, both of which strictly imposed the general rule. In *Smith v. FMC Corp.*, a products liability case in which this court was applying the substantive law of Oklahoma, we stated:

"The bulk of FMC's case was directed to the proposition that the [product] in question was not defective at the time it was manufactured or at the time of the accident. In this regard, FMC made a very strong presentation to the effect that its [product] was free of defects (as related to the accident).

"Although FMC presented a substantial case in favor of its position that its [product] was free of defects, it made no showing whatsoever that, assuming there was a defect, appellants' decedents knew of such risk and knowingly assumed the risk.... [I]n the absence of direct or credible and sufficient circumstantial evidence that the decedents were aware of the danger and voluntarily assumed the risk, the Court improperly instructed the jury on the [defense of] assumption of the risk.

. . . .

"Having held that it was error to instruct on the defense of assumption of the risk, the general judgment entered in favor of FMC must be reversed and the case remanded for a new trial. A remand is necessary when, as here, we cannot ascertain from the record whether the jury found that the [product] was defective and, if so, whether the decedents 'assumed the risk' of working under it."

*Smith v. FMC Corp.*, 754 F.2d at 876–77 (emphasis added). In *Smith*, although the bulk of the evidence was directed at the properly submitted defense that the product was not defective and the defendant made a "very strong presentation" to that effect, we held that the error required reversal.

In *McMurray v. Deere and Co., Inc.*, a case very similar to the one before us, we cited the language just quoted from *Smith v. FMC Corp.*, and also referred to *Spencer v. Nelson Sales Co.*, 620 P.2d 477 (Okla. Ct.App.1980), for the proposition that an "unwarranted misuse instruction required reversal." *McMurray v. Deere and Co., Inc.*, 858 F.2d at 1444. We then stated:

"The same problem arises here. The jury *might* have based its verdict on a finding that the [product] was not defective. On the other hand, the jury *might* have based its verdict on findings that decedent 'assumed the risk' of injury, or 'misused' the [product]; these latter findings would be legally impermissible here because there was no evidence to properly support either conclusion. *The general verdict frustrates a determination of the basis of the jury's decision, and reversal and remand for a new trial are required.*"

*Id.* (emphasis added). The quoted language from our opinion in *McMurray* leaves no room for harmless error analysis.

Accordingly, because we consider ourselves bound by *Smith* and *McMurray*, we hold that the district court committed reversible error in giving a jury instruction on the defense of abnormal use which was not supported by the evidence. We do so reluctantly. As we have noted, it appears

very unlikely that the submission of the instruction on the abnormal use defense "significantly influenced" the jury or prejudiced Farrell's "substantial rights." *See Asbill v. Housing Authority of Choctaw Nation of Oklahoma,* 726 F.2d at 1504. However, because we cannot say with absolute certainty, as required by *McMurray* and *Smith,* that the jury was not influenced by the submission of the abnormal use instruction, we must reverse and remand for a new trial.

The advisability of submitting special verdict forms to a jury in cases involving multiple defenses is one of the lessons to be gleaned from this situation. Even if some evidence had been submitted on the defense in question appellate review on the point would have been hampered by the general verdict.

REVERSED and REMANDED.